Good morning, Your Honors. May it please the Court. Kevin Gomarnik on behalf of Appellants Tabitha Sperring, Paisley Marchant, and Sally Poston. And I would request to reserve two minutes for rebuttal. Appellants submit that the District Court abused its discretion when it failed to use the guidelines set forth in the published decision, Henson v. Fidelity. Not only did the District Court fail to apply the Henson factors, but it improperly weighed certain facts in favor of 60B denial, when those same facts rather should have been weighed in favor of 60B relief or should have had minimal weight at all. And just to identify a few examples, the District Court made a finding that it was hardly extraordinary that the Langieri decision would have, that it was hardly extraordinary that Langieri did actually change the law within the circuit, given the other authorities outside of the circuit. And when one actually takes a look at Henson, the District Court there made the exact same argument. It said it was hardly extraordinary given the other authorities outside of the circuit. And there, the Henson Court of Appeals specifically said that that in and of itself was an abuse of discretion. And what we're supposed to focus on is the circuit law at the time. Another abuse of discretion was the court found on the issue of reliance in the interest of finality that LuLaRoe, I'll refer to Pelley's as LuLaRoe, that LuLaRoe did have a general interest in finality, but it didn't face any specific prejudice. And taking these facts, the District Court determined that this is neutral, not in favor of relief, not in favor of denial of 60B. However, under the same exact fact pattern in Henson, the Court of Appeals found that this needs to heavily, and I quote, heavily weigh in favor of 60B relief. Another abuse of discretion by the District Court was it made a determination that the appellants made a deliberate calculated decision to voluntarily dismiss. But as Henson counsels, one cannot be faulted for simply following the state of the law at that time. Now I want to briefly go through... So in terms of the state of the law at that time, I don't know if it's Langeer or Langeery, but Langeer, whichever it is, Langeer says that it was just solemnizing what seems obvious. So why shouldn't we take that to mean that we have to treat the Microsoft case as having changed the law? Sure. So when it said that it was just solemnizing what seemed obvious, it was making that statement at that point in time based on authorities, or primarily based on authorities that were issued after the sparing parties made the decision to dismiss. So we have to look at what was the state of the law at the time of the dismissal. And the state of the law, I strongly believe, suggested that CONSHA still remained good law. And I think this is a really important point that I need to touch on. And I need to briefly go through some of the history within this circuit and the Supreme Court. But Microsoft undoubtedly concerned a voluntary dismissal following a denial of a motion for class certification. And what the court in Microsoft determined was given the legislative intent behind Rule 23-F, it was the intent that the only means by which there could be an immediate appeal was through 23-F, and that a voluntary dismissal is inappropriate because the discretion to have an immediate appeal needs to lie within the circuit courts alone. And Microsoft specifically distinguished Rule 1292-B. And I'm going to talk more about 1292-B because I think it's very important. But it distinguished 1292-B to 23-F. So then we get to Rodriguez. Rodriguez is a published decision in this circuit issued a year after Microsoft. And what Rodriguez found, and I think this is a really important quote. I'm having a hard time finding it now. But essentially it found that CONSHA still controls. And that's a really important statement because we need to look at what happened in CONSHA. CONSHA concerned a motion for remand, an adverse ruling on a motion for remand, and a voluntary dismissal following that motion for remand. The only way that somebody can get an instant appeal under these statutes is by way of a 1292-B certification. However, again, Rodriguez found that CONSHA still remained good law. Then we get to sparing. Sparing completely goes against what was stated in CONSHA. Because sparing decides that analogizing the 23-F, 1292-B, which Microsoft actually distinguished the two. Sparing found that because the only route to an instant appeal is under 1292-B, then that means that one cannot voluntarily dismiss. So this is completely inconsistent with what was stated in CONSHA and Rodriguez. And that was the state of the law that the sparing parties essentially relied upon. And what about the footnote in LAMPS Plus? So the footnote in LAMPS Plus was merely dicta. And it was simply just distinguishing the facts from Microsoft. It wasn't making any sort of statement regarding that this needs to expand, that the Microsoft ruling needs to expand to voluntary dismissals following an arbitration ruling. It's not just the footnote in LAMPS Plus. It's also Justice Breyer's dissent, which is quite explicit in saying that, at least in his view, the reasoning of Microsoft applied very much in the arbitration context. And so I guess I was on the panel in Langaire. I don't know how to say it either, Judge Freeland, so I'll go with Langaire. You know, I'm not sure, in retrospect, I would have endorsed Judge Bumate's use of the word that this was just totally obvious. I didn't think it was obvious then. It was a question that I certainly struggled with in terms of how to come out. But I think the way I approach this case, we're having to view this through the lens of the district court's exercise of discretion. And I'm just having a hard time seeing how we can fault the court for saying, listen, there were enough kind of flashing yellow lights, maybe not a flashing red light, but enough flashing yellow lights out there when you made the decision such that you knew you were taking somewhat of a risk. And it's not unfair in these circumstances basically to hold you to the gamble that you took on. And so maybe you can help me understand why that's not the appropriate way to look at the case. Sure. So in Henson, the circuit court also found that there was some risk because there were other cases outside of the circuit, which held consistent with where Microsoft ultimately ended up. And so likewise here, we have cases outside of the circuit. So but as Henson counsels, you need to really focus on the state of the law within the circuit, the Ninth Circuit itself. So the flashing yellow lights, as you put it, if you read the district court's decision, it cites to a few district court cases within the Ninth Circuit and then concedes that those predated Rodriguez. But then it goes on to say, but because those cited to out of circuit decisions, then sparing plaintiffs should have reasonably known that the law is going to change. That's completely inconsistent with Henson. But Henson, so Henson didn't have a Supreme Court case to look at. We now had Microsoft plus the out of circuit plus Lamps Plus. And I'm having trouble seeing how that's not different than Henson. Well, Henson doesn't say that when there's Supreme Court, new Supreme Court precedent. But that's because there wasn't any, right? I mean, the whole point was it was the first in this line of cases from the Supreme Court. So, I mean, I don't know why Henson would have said anything one way or the other about Supreme Court. But if there had been a Supreme Court case, it's hard to imagine they wouldn't have said it mattered. We're clearly bound by the Supreme Court. Yeah. So I think you need to just take a step back. And it's not about whether it's a Supreme Court case or Ninth Circuit case. It's just was it reasonable to believe that the state of the law in the Ninth Circuit was still following Olmstead and Concha at the time that the dismissal was taken? It's just an issue of equity and justice. And here, I confess, I respectfully, I still think that there's a lot of confusion in the Ninth Circuit regarding whether Concha has been overturned or not, even today. And as I said, there's the inconsistency between Langier and Concha regarding this 1292B issue. And courts today, even recently, I believe in Judge Friedland's dissent. Let me find that case. Torrent v. Yockle. You know, it's reasonable given that here Concha is still cited as good law. And likewise in Trensate USA, Inc. v. Swisher, one where Judge Watford sat on the panel, Concha is still referenced there as well. So it's unfair to fault the sparing parties before we even have the benefit of these Ninth Circuit decisions that came out after the dismissal to fault them for following what strongly appeared to be the state of the law. And one thing I want to emphasize. I think this goes back to Judge Watford's question. Say we agree with you that that was a possible position under the state of the law. Why is it still not at least a gamble, though? And why isn't that the question? I mean, it may be that you could think the law could go either way. And so you guys took a gamble. Sure. So in the Henson decision, there were really three primary subfactors that the court looked at when determining on the change of law factor. The first was, was there established circuit law? And I think the district court here made clear that the law was – that Langieri did change the law within the circuit. The second was, was there a knowingly – a knowing risk of permanent finality? And that's an important point because what happened in Henson was there was no statement or position taken by the defendants there that if the appeal is going to be dismissed on jurisdictional grounds, that the case is over. And that was an important point that Henson considered. And lastly, this was actually a favor that weighed in favor of denial of Rule 60B. And their fidelity, the defendant, actually said that it will challenge jurisdiction. It said that. And plaintiffs knew it, but they still took the gamble. And still, this change in the law factor, the court found to be neutral or even slightly favored 60B. Here, all three of those same points actually weigh in favor of the sparing parties and are stronger than in Henson. We have the district court admitting that there was a change in the circuit law from Langieri. There was no statement or any position taken by defendants that sparing parties are taking a knowing risk that if there is going to be a motion to dismiss granted by the circuit court based on jurisdictional grounds, that the case is over. There's no statement like that. And lastly, unlike in Henson where fidelity said it will challenge jurisdiction, here all we have is a non-opposition filed by LuLaRoe where they reserve the right to bring any argument under the sun. They just said, oh, we're reserving the right to have procedural, substantive, and jurisdictional arguments. There's nothing like even in Henson where this factor still weighed in favor of 60B relief, where LuLaRoe took any position on the challenge. And that's a far cry from the case that LuLaRoe is likely going to rely on, which is Stratford. And in Stratford, the dismissal was vehemently contested. And there the defendant even took the position that if it were to be successful on a motion to dismiss for jurisdictional grounds, then there is no appellate jurisdiction. And the plaintiffs even conceded that in one of their briefs. We have no facts like that here. So I quickly just want to run through the other factors. And let me just say, even if the first factor of the change in law does not weigh in favor of 60B, although I strongly believe it does, there's still an overwhelming support from the other factors that do weigh in favor of 60B relief. You're running out of time. I just want to make sure I get an answer to this question before you sit down. If you were to get Rule 60B relief here, what is it exactly that you would intend to do going forward? We would go through the arbitration process. You would individually arbitrate the claims of these three plaintiffs, even though you said before that it was completely economically infeasible to do that? Yeah, so feasibility actually just means that it's not convenient to do. And it wasn't convenient to do given the court's rulings on issues in the arbitration. And I will actually let you know, we filed a subsequent class action concerning someone else, went through a similar process. We went through the arbitration process, and now that case is also up in front of the Court of Appeals on the issue of unconscionability of the arbitration provision. So we would just go through the same process as we went in that case. So you've basically used up your time. I'll still give you two minutes for rebuttal, but maybe we should stop here and hear from your opposing counsel. Thank you, Your Honors. Thank you. Morning. Morning. May it please the court, counsel for appellants, William O'Hare for the appellees. The pivot point in the case is obviously, it seems to us, to focus on whether there was a change in the law, if there was qualitatively what it was. Unlike Henson, and to some extent like Henson, we have an out-of-circuit case from the United States Supreme Court, which is obviously going to be treated very differently than a circuit split, which the Henson court addressed. Ultimately, whether Langier was even, for purposes of Rule 60, a change in the law, as the appellants suggest. And the trial court allowed, for purposes of at least that analysis, which I think makes the trial court's analysis a bit more robust, or whether we're right that it's merely Langier, if I've got the pronunciation right there, an acknowledgment of a change that had already occurred when Microsoft effectively overruled Olmstead. The results should be the same either way, in our view, because the trial court properly determined that Langier, if it changed and the trial court treated it as one, was certainly not an extraordinary one, not an unexpected one, and that the appellants made a deliberate choice not to arbitrate and not to follow what was then a risk-free path to appellate review, a path much quicker and less arduous than virtually every other litigant is normally required to follow. Why? Because they've got to go fully litigate, often all the way through trial and post-trial, which takes many months, years. The appellants here, as counsel recently acknowledged, had a very rapid path. It's a path laid out by Congress under the Federal Arbitration Act. Counsel, let me ask you why you think it was so obvious that Langier would come out the way that it did, particularly in light of the fact that we had Rodriguez, because I think if we didn't have Rodriguez, I think maybe your argument would have a little bit more force. But in light of the fact that Rodriguez intervened, it comes after Microsoft, the main distinguishing factor that one would think would be in play is that, well, this Rule 23F procedure, it's a special circumstance, and that's what drove the court's decision in Microsoft. And so if you're outside that context, the rule in Microsoft is not going to apply. Rodriguez comes along, and maybe it doesn't say that that was the critical thing, but it's obviously a case that doesn't involve Rule 23F, and it comes out the opposite way. Why was it so obvious that once you got into the arbitration context, which, again, doesn't have that special Rule 23F component to it, why was it so obvious that we were going to extend Baker to that context? Well, first, the short answer is in Langier, which I'll come back to in a moment. Langier explains why it is. Again, I was on the panel there, and there is a very short footnote that, in my view, still today, does not really satisfactorily distinguish Rodriguez. It says what it says. But like I said, it wasn't obvious to me when I was sitting on that panel that that was going to be the outcome that we would reach. So that's why I wanted to hear your take on why it was so obvious. Well, again, before I come back to the opinion that I guess we're going to, to some extent, examine even more carefully, perhaps, than it was at the time, number one, Gonzales doesn't obviously address the context of arbitration. You mean Rodriguez? Excuse me, Rodriguez does not address this context. So it's dealing with a realm of dismissal with prejudice in the summary judgment context, which may well have survived Microsoft to this day, to the extent that Olmstead is sort of a broad proclamation of the ability to use the voluntary dismissal tactic to obtain a review of an interlocutory order. Plainly, Microsoft undermined that. Because that basically, other than the specifics of a remand order, the language that's being relied upon by appellants here is basically a broad proclamation that, under all circumstances, this is a legitimate device. We know that wasn't true after Microsoft. So then the question is, where might it still be true? And so Rodriguez basically said, it's still true here. And here is a situation where a trial court grants, you have an actual adverse ruling on the merits of the case, you know, throwing out a number of your claims. A plaintiff can dismiss with prejudice their remaining claims. And now there's nothing left to decide in the trial court. So, yes, relying on that broader principle, still unconscious, which actually didn't have to do with summary judgment either. So the only unconscious being relied upon is a very broadly stated principle. Gonzales is applying it in a very specific circumstance. But Rodriguez discussed Microsoft and talked about it as the plaintiffs had already been denied a discretionary appeal pursuant to Rule 23F. So why wasn't it reasonable to read that and think, okay, well, Microsoft only changed it as to discretionary appeal denials in 23F? Well, Microsoft explicitly only did. That's true. It was a case involving 23F. The question is, which is what ultimately had to be addressed in Langier, is did Microsoft effectively overrule, not Concha, Langier, meaning, or excuse me, Olmstead, meaning in the context that we're dealing with. And so leaving aside however the court, you know, wrestled with the issues in Langier, not only does Langier tell us repeatedly that it was Microsoft that was the relevant change of the law for our purposes here, sparing one, the first appeal in this very case, put no one, likewise characterizes the Langier ruling as holding that under Microsoft Olmstead has been overruled. Now, the Langier panel, this isn't just a question of how the Judge Watford or others on the panel chose to characterize what they were doing. They could not reach the decision that they did unless Olmstead had already been effectively overruled by the Supreme Court. That panel was obligated to follow it. And so the reason it couldn't follow it is because it was clearly irreconcilable. If it wasn't clearly irreconcilable, then Langier was wrong to decide it. But of course, this panel, no more than Langier, gets to disregard Langier unless somebody else has come along and said that Langier is clearly irreconcilable with a U.S. Supreme Court decision, which kind of turns it on its head. So the other comment in terms of where the court said Langier hardly breaks new ground, again, I think, while important, that's less important than the legal foundation on which Langier was necessarily decided in terms of what it needed to find in terms of the impact of Microsoft. The court indeed did mention two cases that were decided after the dismissal in this case, but it referred to four more that were before. Yes, a case in another circuit that came to the same conclusion. There were other circuit cases that weren't mentioned in Langier. Obviously, again, it was more of a teaser, but the Johnson case here in the case of a dismissal without prejudice that said 1292B is the sole route to appeal a grant of an arb order, and then the Varela dicta, which, you know, there's dicta and then there's dicta. I mean, when the Supreme Court lays out a pretty broad opinion in terms of appellate jurisdiction and an attempt to use this kind of tactic to obtain a clearly interlocutory order, and while, yes, it rules in the context of a class certification motion, but the premise of it, which, again, is precisely what Langier and Sparing One concluded, is you just need to change the word, you know, class certification and arbitration motion. I think even the Langier opinion says that, and basically you wouldn't need to rewrite the opinion. And obviously dicta is a foreshadowing, which even if you had an unsettled state of the law within the circuit, that doesn't get you over the hump on the necessary showing of an extraordinary change in the law, and where you have a Supreme Court decision that is irreconcilable with the circuit authority that you're relying on. Now, the other thing I'd suggest, yes, in Microsoft there were the intricacies of Rule 23F. I would argue we have a stronger basis to suggest that this tactic shouldn't work. It's an act of Congress. The Federal Arbitration Act really goes to some detail to spell out what you can and you can't appeal. And so a policy judgment was made that, you know, orders denying motions to compel arbitration, failure to confirm awards and so forth, they're immediately appealable. So Congress knew how to say, we want you to appeal when you do. And an order denying a motion to compel arbitration is not. And part of what underlies that is a policy that says, we want cases that are, where a trial court finds there's a, you know, an enforceable arbitration agreement, to be arbitrated promptly. And so I think that, well, in one case there's 23F here, we've got an arbitration motion, I would suggest, and I believe the Langier Court embraced this principle too, we've got a strong policy dictate from Congress. As far as the remainder of the Henson factors, I think all factors are not equal. I mean, in a motion for relief based on a change in the law, plainly you've got to have a change in the law. And it also has to be a change that's extraordinary, unexpected, you know, certainly not one where there's a calculated risk. Or in the words of the Mitchell case, a mere development in jurisprudence. And there's a number of cases where courts did not mechanically go through, you know, each of the Phelps or Henson factors, and those decisions themselves say, you know, it doesn't handcuff a court, it's not rigid. You may be required to look at more things, you may or may not be required to deal with all of those. And in addition to Stratford, I mean, we've got a Supreme Court decision that predates Henson, Gonzales, where the court basically looked at two factors, what later turned out to be Henson factors, meaning a lack of an extraordinary change. There was a change, but it wasn't extraordinary, and a lack of diligence. And that was enough. So it would seem that would be a good example. And then even the Mitchell case, which it's hard to say whether they found out there was no change or, yeah, there was a change, but it wasn't extraordinary enough, but basically the case pivoted on that. And I would also suggest, particularly keeping in mind the standard of review here, even though Judge Barat didn't do numbers one through five, we all agree factor six doesn't count, fairly red, in going through the court's opinion, you can find those factors in there. He did it in sort of a three-piece structure of extraordinary circumstances of a number of ways, our reliance interest, and then other factors. I think the one that he didn't address in any form or fashion is the timeliness of their motion. Our view is it would have been generous to call that neutral. We think it could have been negative. There was actually some disputed evidence on that in terms of not so much how long they waited, but why. Were they gaming it against that other case, where they were sort of going to file the one motion, or excuse me, file the other case. If they could get that one out of arbitration, then this one would go away. But I don't think this is a situation where the timing of the motion would take an otherwise, in our view, unmeritorious motion and somehow get it over the top because it was quickly made. I just don't think here that's going to be a critical factor. Unless the court has any other questions. Any questions? Thank you for the helpful argument. We have some time for rebuttal. So it's interesting to me now that Lula Roe is trying to sidestep Concha and say, well, it's not about Concha, it's about Olmstead being overruled. Throughout their briefing in both the District Court and before the Court of Appeals, for example, at page 32 of their appellate brief, they say that Microsoft overruled, implicitly overruled Concha. And I'm glad that Lula Roe brought up the Gonzales versus Coverall case, which is a Ninth Circuit, albeit unpublished, decision. But that case did concern an arbitration. And it found, ultimately, I'm just going to read this. It makes no difference that Gonzales then secured a voluntary dismissal without prejudice. A plaintiff's voluntary dismissal without prejudice is ordinarily not a final judgment from which the plaintiffs may appeal, citing Concha. So there would have been no reason to cite Concha and make that statement if it was the case that Microsoft implicitly also applied to arbitrations. It wouldn't have made any sense. And I want to refocus again on this issue of 1292B. I think it's really critical because if you were to replace arbitration with remand in the sparing decision, then it wouldn't make sense because a remand you could only appeal either voluntarily dismissing or through 1292B. And in sparing, the Circuit Court made that same finding, or made the finding that because you could only appeal by way of 1292B that you can't voluntarily dismiss. I'm not going to argue whether it's inconsistent or not, but I think it goes to show that the sparing parties read the state of the law very reasonably at the time when they decided to dismiss. And I see that. How do we – I mean, maybe this is the argument you're making, but I just want to ask you to respond to the Miller v. Gammey argument that your opponent made, which is basically Langear couldn't – so you might say they talked about Concha instead of Olmstead, but Olmstead was about dismissals after an arbitration ruling, so it's exactly on point. And so I don't – so Langear was bound by Olmstead unless Microsoft was clearly reconcilable with Olmstead because otherwise Langear had to follow Olmstead. So how do we deal with this Miller v. Gammey argument? Well, I think – I guess I'm not really understanding the question. The Miller v. Gammey says that a panel of our court has to follow a panel of our court's decision from before, which would be Olmstead, unless there's an intervening Supreme Court or en banc decision that's clearly reconcilable. So Langear had to follow Olmstead unless Microsoft was clearly reconcilable with Olmstead or some other case. I mean, maybe there's a different en banc or Supreme Court, but it seems like it's Microsoft. So in that structure of how precedent works in our court, I don't know how we get around this problem that the Langear panel didn't follow Olmstead. I think what we're doing is we're Monday morning quarterbacking where we're looking at things in hindsight and saying, oh, well, clearly that was the state of the law and that's how it turned out. But we could just put the Langear statement aside because we just have to look at the state of the law at the time when the sparing party is voluntarily dismissed and whether it was reasonable to still understand the state of the law being that a voluntary dismissal with prejudice, unless it's in the rule, unless it's in the class certification context, that that following that method was still the state of the law in the Ninth Circuit. And that is a reasonable read. And again, I keep stressing this. But if we agreed with you, we'd be basically disagreeing with Langear. No, because you could say it was a reasonable understanding of the case law at the time that. But what changed? Langear had to be resting on Microsoft. Like they can't get rid of Olmstead without a Supreme Court or en banc opinion. So is there any Supreme Court or en banc opinion other than Microsoft? Not that I'm aware of. So then what's the difference between Langear and now? How would we not be disagreeing with Langear? Well, again, we would just be looking at what was the state of the law prior to Microsoft or strike that prior to the time that we made the dismissal. And it's sparing that said that it's sparing made the final excuse me. Langear made the final determination that Microsoft is irreconcilable with Olmstead. But we didn't know that that's how the court was going to shake out in Langear until that decision actually came out. We have to look at it at the moment in time of when the voluntary dismissal was made. And I know I'm out of time, but I just briefly want to respond to a few things. The Lula role runs through the other factors. I think the fact that they don't really even address them shows that the other factors overwhelmingly weigh in support of 60 B relief. The one that they do touch on is the issue of timeliness. And on the issue of timeliness, Lula Rose own cases. There's Plotkin. There's another one. But in any event, they both support that timeliness should be determined based on if you're past the time to appeal to a higher court. And here there still was at least one month remaining to seek certification in front of the U.S. Supreme Court. And we filed one month in advance of that. So the case law actually supports timeliness here. And with that, thank you. Thank you both sides for the very helpful arguments. This case is submitted.
judges: TASHIMA, WATFORD, FRIEDLAND